IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTIN J. WALSH, | : | |
| SECRETARY OF LABOR, UNITED | : | |
| STATES DEPARTMENT OF LABOR | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 21-3280 |
| v. | : | |
| | : | |
| GREAT ATLANTIC GRAPHICS, INC., | : | |
| FREDERICK DUFFY, JR., VINCENT | : | |
| GIARROCCO, GREAT ATLANTIC | : | |
| GRAPHICS, INC. PROFIT SHARING | : | |
| 401(K) PLAN, AND GREAT ATLANTIC | : | |
| GRAPHICS, INC. EMPLOYEE | : | |
| BENEFIT PLAN, | : | |
| Defendants. | : | |

## MEMORANDUM

Schiller, J.                                                                                               September 19, 2022

Plaintiff, Martin J. Walsh, the Secretary of Labor (the "Secretary"), asserts claims under ERISA against Defendants Great Atlantic Graphics, Inc. (the "Company"), Frederick Duffy, Jr., Vincent Giarrocco, Great Atlantic Graphics, Inc. Profit Sharing 401(k) Plan (the "401(k) Plan"), and Great Atlantic Graphics, Inc. Employee Benefit Plan (the "Health Plan") (collectively, "Defendants") for breach of their fiduciary duties and engaging in prohibited transactions in connection with their administration of 401(k) and health plans for Great Atlantic Graphics, Inc.'s former employees. Defendants waived service but have since failed to timely appear or otherwise respond to the Complaint. The Secretary subsequently requested and obtained an entry of default against the Defendants. Plaintiff now moves for a default judgment against all Defendants. For the reasons that follow, the Secretary's Motion will be granted.

1

I.  BACKGROUND

In 1981, the Company established a 401(k) Plan, which allowed employees to make contributions via payroll deductions. (Compl., ECF 1, ¶ 9.) The Company also operated a self-insured Health Plan funded by employer contributions and contributions from employee payroll deductions. (*Id*. ¶ 14.) Both the 401(k) Plan and the Health Plan are employee benefit plans within the meaning of ERISA section 3(3) (*Id*. ¶ 5.) The Company was the Sponsor of both the 401(k) Plan and Health Plan and was named as Plan Administrator in the Plan documents. (*Id*. ¶ 6.) The Company exercised discretionary authority and discretionary control with respect to management of both Plans, and it is not disputed that it is a fiduciary of the Plans within the meaning of ERISA section 3(21). (*Id*.)

Duffy was the Company's "sole owner, President, and a member of the Board of Directors . . . ." (*Id*. ¶ 7.) Giarrocco was its "Treasurer, Controller, and a member of the Board of Directors . . . ." (*Id*. ¶ 8.) Both Duffy and Giarrocco exercised discretionary authority and discretionary control over both Plans and it is not disputed that they are the Plans' fiduciaries within the meaning of ERISA section 3(21). (*Id*. ¶¶ 7-8.)

In 2018, the Company entered Chapter 7 Bankruptcy and ceased operation. (*Id*. ¶¶ 10, 12.) At that time, the former employees who participated in the 401(k) Plan were entitled to distributions. (*Id*. ¶ 11). However, Duffy and Giarrocco did not begin termination of the 401(k) Plan or distribution of the assets until May 10, 2021. (*Id*. ¶ 12). When the Complaint was filed, the 401(k) plan's nineteen participants still had not received distributions from its $3,062,276.00 in assets as of October 31, 2019. (*Id*. ¶¶ 12-13.)

The Health Plan offered medical benefits through an agreement between the Company and QCC Insurance Company d/b/a Independence Administrators ("IA"). "Under the agreement with

2

IA, the Company agreed to forward insurance premiums to IA" to pay medical claims filed by the Health Plan's participants. (*Id*. ¶ 16.) Duffy and Giarrocco had authority to transfer funds to and from the relevant accounts and were signatories on checks sent on the Company's behalf to IA. (*Id*. ¶ 17.) The Complaint alleges that from at least January 1, 2016 through December 31, 2017, when the Health Plan had fifty-five participants, the Company, Duffy, and Giarrocco withheld at least $228,233.90 in intended Health Plan contributions from employees' paychecks, but did not forward those funds to IA; instead, they placed these funds in general accounts associated with the business and used it for other purposes (*Id*. ¶¶ 15, 18-19.) IA demanded payment in November 2017, but the Company did not comply. (*Id*. ¶ 21.) Because of this, IA retracted coverage for 1,340 claims incurred in 2016 and 2017, totaling approximately $463,494.02, which the participants and beneficiaries of the Health Plan were thus billed for instead. (*Id*. ¶¶ 22, 24.)

The Secretary filed its Complaint on July 22, 2021. (ECF 1.) Defendants waived service on August 22, 2021. (ECF 3-7.) On November 12, 2021, pursuant to an Order from Judge Tucker (ECF 8), the Secretary informed the Court that it had "engaged in discussion with Defendants and their representative on multiple occasions, and they have indicated that they will not be entering appearances or mounting any defense in this matter." (ECF 9.) The Secretary requested a default on December 17, 2021 (ECF 10) and a default was entered on March 2, 2022. This case was reassigned from Judge Tucker to Judge Schiller on June 29, 2022. (ECF 11.) On August 3, the Secretary moved for a default judgment, seeking, among other relief, to: (1) remove Defendants as fiduciaries of the Plans; (2) authorize the Secretary to appoint an independent fiduciary of the Plans; and (3) enjoin Defendants from serving as fiduciaries of ERISA-covered plans in the future. (ECF 12.)

## II.    STANDARD OF REVIEW

After a default is entered, Fed. R. Civ. P. 55(b)(2) allows a district court to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading. *Anchorage Assocs. v. V.I. Bd. of Tax Revenue*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). An entry of default, however, does not automatically entitle the non-defaulting party to a default judgment. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984). Rather, the decision to enter a default judgment is "left primarily to the discretion of the district court." *Id.* at 1181.

## III.   DISCUSSION

### A. Default Judgment

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). "However, when a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is typically appropriate in such circumstances at least until the defendant comes forward with a motion to set aside the default judgment pursuant to Rule 55(c)." *Mount Nittany Med. Ctr. v. Nittany Urgent Care, P.C.*, No. 11-622, 2011 WL 5869812, at *1 (M.D. Pa. Nov. 22, 2011) (citing *Anchorage Assocs.*, 922 F.2d at 177 n.9).

All three factors weigh in favor of granting a default judgment against Defendants. First, a plaintiff will be prejudiced absent a default judgment when a defendant fails to respond to the plaintiff's claims because the "plaintiff will be left with no other means to vindicate his or her claims." *United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016). Here,

Defendants did not timely respond to the Secretary's claims. They have also since made clear to the Secretary "that they will not be entering appearances or mounting any defense in this matter." (ECF 9.) Absent a default judgment, Defendants' refusal to engage portends an indefinite delay. *See Vo*, 2016 WL 475313, at *3.

Second, "[a] claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869-70 (3d Cir. 1984). Here, the Court is unable to consider whether Defendants have any litigable, meritorious defenses because they never answered or responded to the Complaint or otherwise participated in this litigation. *See Vo*, 2016 WL 475313, at *3; *United States v. Fridman*, No. 21-12090, 2022 WL 1541549, at *3 (D.N.J. May 16, 2022).

Third, a defendant's "failure to answer or otherwise respond to the Complaint, without providing any reasonable explanation, permits the Court to draw an inference of culpability on the its part." *United States v. Cruz*, No. 20-3903, 2021 WL 1884862, at *2 (D.N.J. May 11, 2021); *see also Crocs, Inc. v. Dr Leonard Healthcare Corp.*, No. 21-13583, at *4 (D.N.J. Aug. 30, 2022). Here, Defendants have not answered or responded to the Complaint and, in fact, have informed the Secretary that they do not intend to do so. The Court therefore infers culpability on their part. *See Local Union No. 98 Int'l Bhd. of Elec. Workers v. Chester Cnty. Elec., Inc.*, No. 12-3440, 2013 WL 5567446, at *2 (E.D. Pa. Oct. 9, 2013) ("[W]hile Defendant[s have] failed to engage in this litigation, the docket indicates that [they were] properly served. Therefore, the fault rests with Defendant[s] for [their] failure to participate in this litigation.").

The Court will enter default judgment accordingly.

### B. Relief Requested

"A federal court enforcing fiduciary obligations under ERISA is . . . given broad equitable powers to implement its remedial decrees." *Delgrosso v. Spang & Co.*, 769 F.2d 928, 937 (3d Cir. 1985). ERISA section 502(a)(5) authorizes the Secretary to bring an action to "enjoin any act or practice which violates any provision of this subchapter." 29 U.S.C. § 1132(a)(5)(A). The Secretary may also "obtain other appropriate equitable relief" to redress violations of the statute. *Id.* § 1132(a)(5)(B); *cf. id.* § 1132(a)(3)(B) (permitting participants, beneficiaries, or fiduciaries to sue "to obtain other appropriate equitable relief"). The Supreme Court and the Third Circuit analyze section 502(a)(5) claims similarly to section 502(a)(3) claims due to the identical language of the statute. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260 (1993) (holding "language used in one portion of a statute (§ 502(a)(3)) should be deemed to have the same meaning as the same language used elsewhere in the statute (§ 502(a)(5))"); *Nat'l Sec. Sys. Inc. v. Iola*, 700 F.3d 65, 88 (3d Cir. 2012) ("First, because § 502(a)(5) mirrors § 502(a)(3), we relied heavily on the dicta in *Mertens* addressing the scope of § 502(a)(3).").

The Secretary's Motion seeks: (1) imposition of a $338,452.63 surcharge on Defendants, jointly and severally, to compensate the Health Plan's participants and beneficiaries for their medical expenses and other losses resulting from Defendants' fiduciary misconduct;[1] (2) authority to appoint an independent fiduciary to manage and administer the 401(k) and Health Plans, including by asserting claims on behalf of the Plans and distributing benefits to the Plans' participants and beneficiaries; (3) an order compelling Defendants' cooperation with the independent fiduciary's efforts to administer the Plan by providing the independent fiduciary with

---

[1] The Secretary filed a Declaration from U.S. Department of Labor Investigator Brannon Ottley [Ottley Decl.] to support its Motion. (ECF 12, Ex. A.) According to Ottley, as of August 1, 2022, the unpaid Health Plan claims total approximately $338,452.63.

all records related to the Plans; (4) removal of Duffy, Giarrocco, and the Company as fiduciaries of the Plans; (5) to enjoin Duffy, Giarrocco, and the Company from serving as trustee, fiduciary, advisor, or administrator to any employee benefit plan covered by ERISA in the future; and (6) to enjoin Duffy, Giarrocco, and the Company from future violations of Title I of ERISA.

1. **Surcharge**

In *CIGNA Corporation v. Amara*, the Supreme Court interpreted the "other appropriate equitable relief" language of ERISA section 503(a)(3) to authorize district courts to issue the equitable remedy of surcharge. 563 U.S. 421, 439, 443-44 (2011). Surcharge is an equitable remedy—even though it is in the form of monetary relief—for breaches of trust "committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Id.* at 441-42. To impose a surcharge on Defendants under section 502(a)(3), the Secretary must make out a showing of "actual harm" and causation. *Id.* at 444. It follows that the same showing should allow a surcharge to be imposed as equitable relief under ERISA section 502(a)(5). *See Mertens*, 508 U.S. at 260; *Iola*, 700 F.3d at 88.

Actual harm may consist of detrimental reliance or the loss of an ERISA-protected or common-law trust right. *Id.*; *see also Cunningham v. Wawa, Inc.*, 387 F. Supp. 3d 529, 541-42 (E.D. Pa. 2019) ("Plaintiffs need not show . . . detrimental reliance to seek reformation and surcharge under § 502(a)(3)."). ERISA Section 404(a) incorporates the fiduciary standards of trust law. *Sec'y of Labor v. Doyle*, 675 F.3d 187, 202 (3d Cir. 2012). "[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) (citation and internal quotation omitted). The duties of an ERISA fiduciary include the common law duty of loyalty. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570-71 (1985). The Third Circuit has said that in some

circumstances an ERISA fiduciary has an affirmative obligation to disclose material information even absent a plan beneficiary's request. *Glaziers & Glassworkers Union Loc. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1181 (3d Cir. 1996); *see also Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993). A paradigmatic situation where disclosure may be required is when a beneficiary would have no reason to suspect he should make an inquiry because he is engaged in something that "appear[s] to be a routine matter." *Glaziers*, 93 F.3d at 1181.

Here, the Secretary has shown it is appropriate to impose an equitable surcharge in the amount of medical benefits that the Health Plan did not cover when its participants received medical services despite their mistaken belief that it would. Labor Department Inspector Ottley states that Great Atlantic, Duffy, and Giarrocco failed to inform the participants that they had not forwarded at least $228,233.90 in premium payments to IA. (Ottley Decl. ¶ 3(i).) As a result, IA retracted 1,340 claims made between April 12, 2016 and October 31, 2017, foisting the cost onto the Health Plan's unwitting participants. (*Id.* ¶ 3(j).) The Company's Health Plan participants reasonably expected it to pay for their medical care, a routine activity that implicates a fiduciary's duty to affirmatively disclose. The loss of coverage was material information and the duties of loyalty and disclosure imposed an affirmative obligation on the Health Plan's fiduciaries—Defendants—to disclose it to the participants. Defendants' failure to do so constitutes the actual harm *CIGNA* requires. 563 U.S. at 444; *see also Glaziers*, 90 F.3d at 1181.

To find otherwise would create an unworkable scenario where plan participants would have to inquire repeatedly whether fiduciaries made timely premium payments to the insurance company before seeking any medical treatment—and the fiduciaries would need to respond to voluminous inquiries.

8

The essence of a fiduciary relationship is utmost loyalty and diligent care. Congress did not intend for ERISA to require beneficiaries to exercise greater diligence than their fiduciaries. *See Varity Corp.*, 516 U.S. at 507 (finding Congress intended for ERISA's fiduciary standards to protect individuals harmed by a breach). "[T]he fundamental purpose of [ERISA] is the 'enforcement of strict fiduciary standards of care in the administration of all aspects of pension plans and promotion of the best interests of participants and beneficiaries.'" *Bixler*, 12 F.3d at 1298 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 158 (1985) (Brennan, J., concurring)).

Therefore, the Court will impose a surcharge of $338,452.63 on Duffy, Giarrocco, and the Company, jointly and severally.

### 2. Fiduciary Removal and Appointment of an Independent Fiduciary

A court's equitable power also includes the authority to remove fiduciaries who breach their fiduciary obligations. *Perez v. Kwasny*, No. 14-4286, 2016 WL 558721, at *3 (E.D. Pa. Feb. 9, 2016); *see also* 29 U.S.C. § 1009(a) (authorizing "equitable or remedial relief as the court may deem appropriate" for breach of fiduciary duty including "removal" of a fiduciary). Given Defendants' failure to comply with their fiduciary duties, the Court will order the removal of the Company, Duffy, and Giarrocco as Plan fiduciaries and authorize the Secretary to appoint an independent fiduciary. *See Walsh v. Satori Grp., Inc.*, No. 20-3906, 2021 WL 2072237, at *8 (E.D. Pa. May 24, 2021) (removing fiduciaries for breach of fiduciary duties and granting request for appointment of an independent fiduciary).

Defendants shall be responsible for all costs and fees associated with the independent fiduciary. *See Kwasny*, 2016 WL 558721, at *3 (finding it "just" that defendants "pay the costs associated with" appointing a fiduciary because "[t]his is an expense that would not have accrued but for the [defendants'] breaches"). In addition, Defendants will be required to provide the

independent fiduciary with all records and other material relevant to Plan administration. *See Walsh*, 2021 WL 2072237, at *9.

### 3. Injunction

A court may also "bar serious ERISA violators from serving as fiduciaries or service providers to ERISA-covered plans" in the future. *Kwasny*, 2016 WL 558721, at *4. "Great Atlantic, Duffy, and Giarrocco retained and commingled . . . Health Plan assets within the Company's general banking accounts so these amounts could be used for purposes not related to the Health Plan." (Compl., ¶ 18.) Based on the uncontested allegations in the Complaint, the Company, Duffy, and Giarrocco failed to fulfill their fiduciary duties and "used Plan assets for [their] own benefit. In that [they] cannot be entrusted managing ERISA-covered plans or their assets, a permanent injunction barring" them from serving as fiduciaries in the future is justified. *Kwasny*, 2016 WL 558721, at *4.

## IV. CONCLUSION

For the reasons stated above, the Court grants the Secretary's Motion for a default judgment, judgment will be entered in his favor and against Defendants, and the Court will enter an Order awarding the relief the Secretary seeks.

An Order consistent with this Memorandum will be docketed separately.